Ruffin, C. J.
 

 The case turns on the question of assent by the executor to his own legacy. He might give it either directly or to the first taker, and that would enure to him in succession. If he didagggp^sygf^nterest in remainder became subject to him;
 
 Knight
 
 v.
 
 Leake,
 
 2 Dev. &
 
 Bat. 733
 
 ; and tfra piegroes could not afterwards be sold umiea tbe
 
 bonis testatoris.
 
 'For it is settled, thJrinea,ss"ent off theiexecutor passes the legal property toph°WSh the executor may thereby commit
 
 fóvastavit,
 
 and¿#creditor may follow the property in equity.
 
 Hortner v. Smith, 2
 
 Hay. 305.
 
 Alston
 
 v.
 
 Foster,
 
 1 Dev. Eq. 337. It is not, therefore, material to the rights of the plaintiff in this case, to determine the character, in point of good faith, of the subsequent suit, judgment, and execution under which William L. Rhodes purchased. It was proper enough to make it a part of the bill, in order to have all the rights of every class of claimants passed on. The true character of the transaction can indeed hardly be doubted, notwithstanding the answers. No counsel could have advised, that next of kin could not by a bill compel an insolvent and unfaithful administrator to bring in securities belonging to them and restrain him from parting from them to others. It is obvious, that the remedy on the administration bond was the real object ; probably under an impression that the assent of the executor, and the purchase of the plaintiff under an execution against him, might be avoided by a sale for a liability of the testator, the original owner of the negroes. William L.
 
 *158
 
 Rhodes says, he thought it his duty, after he became guardian, to secure the hires for 1843, for his wards and himself, and therefore brought the action on the administration bond under the advice of counsel. But that is a most extraordinary statement, leading to this conclusion : that for the purpose of securing the sum of $126 11, he would sell seventeen negroes, as the property of the testator, and thereby defeat a gift of one half of them to himself and his wards. It is true that he purchased, and therefore would not be loser ; but what becomes of his duty, of which he speaks, to the infants, who owned four fifths of that half? The impression, therefore, cannot but be very strong, that the parties fabricated the claim for the occasion, by not allowing the proper credits for the debts of William L. Rhodes, and for the charges for keeping some of the negroes, so as to overreach the plaintiff’s purchase, as they supposed. But in that they were mistaken, if the
 
 executor
 
 had assented to his legacy; since in that case the plaintiff got a good title to one half the negroes, and would be entitled, at
 
 all
 
 events, to a partition against the owner, or owners of the other half, whether the ownership be in William L. Rhodes alone, or in him and his brothers and bis sister under the will. Upon the question of assent, we think there is no doubt, either in point of fact or law, that there was one. It is not necessary, that it should be expressly given, or directly proved; for it may be implied from the acts of the parties, or the declarations of the executor, though not amounting simply to an assent. But the acts or declarations, in order to have that effect, must be such as are unequivocal, and satisfy tbe mind, that the executor meant to acknowledge the right of the legatee to the thing, and, of course, to determine his own title or control over it, in opposition to the legatee. When the executor delivers the legacy to the donee, as his, the act is unequivocal. So a long enjoyment of the legatee, with the knowledge of the executor, is the highest evidence of
 
 *159
 
 such delivery, and of the purpose of it. Here, the enjoyment was in the legatee for life, for about seven years before the sale, at which the plaintiff purchased. It is true, the residence of the executor with his mother, might make that circumstance, in itself, somewhat ambiguous, if there appeared to be any reason, upon which it could be supposed, the executor ought, or would have wished to hold the property as executor. But there was nothing of that sort in the case. For the interference of the son with the negroes, either in superintending their labour on the farm, or occasionally hiring some of them, is rather to be referred to his wish to serve his mother, with whom he lived, and of all whose affairs he took the charge on account of her sex, age and infirmity, than to his rights or duties as executor. It is so, because there were no known debts of the testator unpaid : the negroes, as negroes belonging to an estate usually are, were not regularly hired, and accounts kept by the executor of their hires as parts of the estate ; but most of them were worked on the mother’s plantation, with which, as executor, the son had nothing to do, and from the profits of their labour on the mother’s land, as well as the small hires that were received, the mother and her family were supported. It is true, the answer of Edmund Rhodes denies positively, that he had either announced or given an assent to the legacy to his mother or himself. The Court could not, indeed, look at that as evidence between the other parties ; but each party read it, and commented on its bearing on this point, and therefore the Court is to treat it as they did. We think however, notwithstanding the positive denial of the assent, in terms, that the answer itself shews very strongly, that it had been given ; for the denial may be only of what that defendant deemed an assent, which is matter of law to a considerable extent, and about which he might be mistaken ; while the facts, that under his own management the negroes had been employed on his mother’s farm, or hired out for her benefit
 
 *160
 
 for seven years after the debts of the testator had been, or were supposed to have been, paid, (which are found in the answer,) are of a character that precluded all danger of mistake on his part, and tend clearly to establish his understanding and admission, that the negroes were his mother’s for life, and then in her enjoyment as such, and that is in law an assent. But, if it were allowable to doubt on that state of the case, the acts of the executor, in listing the negroes for taxes, make the matter plain. He listed them in that character but one year ; and af. terwards when he gave in his own list, he gave in that of his mother, and every year included these negroes as hers and in her name. It may be true, that she was liable for the taxes of the negroes, as the possessor of them, although they might not be her property.
 

 But the defendant by using that argument gives up the point; for the question is, whether the possession was in her as legatee, or in the son as executor. He denies that he assented to the legacy or parted from the possession, and says that he held some, and hired out the others as executor. Now, there is no pretence that his mother hired any of the negroes from him. Therefore, if she was liable as possessor, for the taxes, she must have got the possession in some other
 
 way;
 
 and that could only have been as legatee. Such acts of an executor are not like a congratulation of the legatee upon his legacy upon opening the will. They could proceed through such a course of years, only from a settled purpose in the executor to recognise the negroes as the property of the legatee, when he thus subjected her to the charge of the taxes on them from year to year. But the inference, from the circumstances already mentioned, is rendered irresistible, when to them is added the conduct of the mother and son, and also of the defendant William L. Rhodes, at and after the first sale of the negroes by the sheriff.
 

 An undivided half of them in remainder after the life estate of the mother was offered and sold, «5
 
 the interest
 
 
 *161
 
 of Edmund Rhodes
 
 de bonis propriis;
 
 and after the sale the negroes went back into the service of Mrs. Rhodes,
 
 as tenant for life,
 
 and under the management of Edmund for the benefit of his mother, as before ; and for the next year he again gave them in for taxes, as hers. If all those persons thus acquiesced as to the nature of their several interests, it comes very much to the same thing, as if Edmund Rhodes had purchased from his mother her life estate
 
 eo nomine,
 
 or in like manner sold his remainder. Lamphet’s
 
 case,
 
 10 Rep. 47, 52. The defendants state, that Edmund Rhodes did object to the sale. But the Court is not at liberty to act on that statement as true. In the first place, why should he ? He says his reason was, that the estate was in debt to him. But there is no evidence of that, but every reason to think otherwise. Besides, it is difficult to believe, that any objection could have been made known, since even William L. Rhodes did not hear it; for he answers upon that point, not on his knowledge, but upon subsequent information. One witness is under the impression that he did hear Edmund Rhodes make an objection of some kind to the sale, but he is unable to state his words or even the nature of the objection. But if such a thing had occurred, it must be supposed that William L. Rhodes and many others, out of such a crowd as usually attends a sale of so many negroes, would have heard it. So far from it, two witnesses, and those most likely to be cognizant of all that passed, tho officer who sold, and the plaintiff’s agent, swear, that nothing like it was said in their hearing: but, on the contrary, the latter states, that Edmund wished the remainder in the negroes sold as his, under the execution of his nephews and niece, and expressly requested the witness Latham not to bid, in order that William L. Rhodes might buy them in. If this,
 
 per se,
 
 were not an assent by implication, it at least, conclusively removes any ambiguity that might possibly rest on the other cir
 
 *162
 
 cumstances. The Court must therefore declare, that the defendant, Edmund Rhodes, as executor of the testator Arthur, did assent to the legacy of the negroes given in the will to Amelia Rhodes, for her life, and after her death, given, the one half to himself, and the other to the children of William Rhodes, deceased; and that when the negroes were seised under the executions against the property of Edmund Rhodes, in favour of the plaintiff and of William L. Rhodes and others, and at the sale thereof by the sheriff to the plaintiff, on the 22d of July, as mentioned in the pleadings, Mrs. Amelia Rhodes held them as legatee and tenant for life, under such bequest and assent, and that the remainder, in one undivided half of them, was then vested in and claimed by the defendant Edmund Rhodes as legatee, and not as the executor - of his father’s will.
 

 Therefore, the plaintiff is entitled to half of the slaves and of their increase, and also of the profits of them sinee the death of Mrs. Rhodes. The Court of course does not undertake to determine in this cause between the defendants, as to the right to the other half of the negroes— with which the plaintiff has no concern. There must, therefore, be the usual decree for the production of the slaves and their division as here directed; and for an account of the profits and expenses of the negroes sinee Mrs. Rhodes died.
 

 The defendant William L. Rhodes must pay the costs of the plaintiff up to the present time.
 

 Ym,
 
 Curiam.
 

 Decree accordingly»